UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEROME RIDDICK, : | |
|     Plaintiff, : | |
| : | |
|     v. : | Case No. 3:11cv631 (SRU) |
| : | |
| LEO ARNONE, et al., : | |
|     Defendants. : | |

RULING ON DEFENDANT KOCIENDA'S MOTION TO DISMISS [Doc. #14]
AND PLAINTIFF'S MOTION TO AMEND [Doc. #15]

Plaintiff Jerome Riddick filed this action *pro se* under 42 U.S.C. § 1983 (2000).  He named six defendants:  Leo Arnone, Lynn Milling, Scott Semple, Thomas Kocienda, Richard Bush and Suzanne Ducate.  In his original complaint, Riddick challenged the hearing for his placement on Special Needs Status in the Behavioral Engagement Unit.  On May 2, 2011, the court filed an Initial Review Order dismissing the claims against all of the defendants except Thomas Kocienda.  The court determined that Riddick failed to allege how any of the other defendants were involved in the incidents underlying his claims.  The court also concluded that Riddick failed to state a cognizable Fourteenth Amendment claim for denial of due process.  The court instructed the plaintiff to file an amended complaint to clarify his retaliation claim by including specific allegations of how each defendant was involved in his claims and directed him to demonstrate how he exhausted his administrative remedies before commencing this action.  *See* Doc. #4.

On May 24, 2011, Riddick filed an amended complaint including only Thomas Kocienda

as a defendant. Riddick now alleges that Kocienda issued him five disciplinary reports in an eight-day period, processed the reports himself and sanctioned Riddick with confinement to quarters for ten days, during which time Riddick was denied showers, recreation, telephone access and hygiene items. Riddick identifies his claims as denial of equal protection, cruel and unusual punishment, and retaliation. *See* Doc. #5. The court ordered service on defendant Kocienda in his individual capacity. *See* Doc. #6.

I.  Plaintiff's Motion for to Amend [Doc. #15]

In addition to filing a memorandum in opposition to the motion to dismiss, Riddick moves to file a second amended complaint. He states only that amendment is necessary for him to pursue his conditions of confinement claim. He has neither provided a proposed second amended complaint for the court's review nor explained why he waited eight months to file his motion. The court notes that Riddick did not seek leave to amend until defendant Kocienda filed his motion to dismiss arguing, *inter alia*, that the Eighth Amendment claim was not cognizable.

Amendment is governed by Rule 15(a), Fed. R. Civ. P. "[Leave to amend] should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir. 2001). For example, with regard to the "undue delay" factor, the Second Circuit has held that "despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir. 2000).

The most important factor in considering whether to allow amendment under Rule 15(a) is whether the opposing party would be prejudiced by the proposed amendment. *Ruotolo v. City*

*of New York*, 514 F.3d 184, 191 (2d Cir. 2008).  This inquiry is "often intertwined" with the consideration of whether there was undue delay on the part of the movant because a long delay is more likely to be prejudicial.  *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 47 (2d Cir. 1983).  Where a party seeks to amend his complaint to avoid an adverse ruling, the court may deny leave to amend.  *See Ansam Assoc., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (holding that trial court did not abuse discretion in denying leave to amend where plaintiff already had amended once, discovery period had concluded and defendant had filed motion for summary judgment).  In addition, when the plaintiff attempts to add an additional claim, evaluation of prejudice requires the court to consider whether the new claim would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993).

      RIDDICK states that the amendment relates to his Eighth Amendment claim.  Because he has not attached a proposed amended complaint, the court cannot determine whether the amendment would simply clarify the existing claim or expand the claim so that further discovery would be required.  If additional discovery is needed, the court will be required to extend the deadlines in the scheduling order and resolution of this mater will be delayed.  Riddick makes no showing of good cause to warrant such action and fails to show that he has been acting diligently in prosecuting this case.  Accordingly, Riddick's motion to amend is denied.

II.     <u>Kocienda's Motion to Dismiss [Doc. #14]</u>

      Kocienda moves to dismiss the amended complaint on the grounds that the amended

complaint fails to state cognizable claim for violation of the Equal Protection Clause or the Eighth Amendment, Riddick's allegations do no constitute retaliation, the Eleventh Amendment protects the defendant from claims for damages in his official capacity, and the defendant is protected by qualified immunity.

### A. Standard of Review

When considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003). The court considers not whether the plaintiff ultimately will prevail, but whether he has stated a claim upon which relief may be granted so that he should be entitled to offer evidence to support his claim. *See York v. Association of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.), *cert. denied*, 537 U.S. 1089 (2002).

Although the court does not usually consider documents submitted by the defense in support of a motion to dismiss, the court may take judicial notice of decisions and filings in related litigation between the parties without converting the motion to a motion for summary judgment. *See Staehr v. Hartford Financial Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (when considering a motion to dismiss, courts routinely take judicial notice of documents filed in other cases).

### B. Facts

Kocienda is a psychologist who was working at Garner Correctional Institution during the relevant time period. On March 18, 22, 23, 24 and 25, 2011, Kocienda issued Riddick disciplinary reports, processed the disciplinary reports himself, and did not afford Riddick the

procedural protections provided in the Code of Penal Discipline, Administrative Directive 9.6.

Riddick alleges that Kocienda took those actions because Riddick told him that he could not punish Riddick because he was not a custodial officer. Kocienda placed Riddick on modified confined-to-quarters status for ten days, from March 18, 2011, until March 28, 2011. During that time, Riddick was denied showers, recreation, phone usage and hygiene items.

In the original complaint, however, Riddick alleged that he was confined for the same ten-day period as a result of his placement on Behavioral Engagement Unit status. He attached to the original complaint a copy of the notification for the March 23, 2011 hearing for placement on Special Needs (Behavioral Engagement Unit) management status. On March 29, 2011, Riddick received notification of the approval of his placement on Special Needs Management status. *See* Doc. #1 at 10-15.

    C.    Discussion

Kocienda moves to dismiss all claims in the amended complaint on the grounds that Riddick fails to state cognizable claims for retaliation or violation of his Fourteenth and Eighth Amendment rights, all damages claims against him in his official capacity are barred by the Eleventh Amendment, and he is protected by qualified immunity.

    1.    Equal Protection

Riddick argues that the failure to provide procedural protections at the disciplinary hearing deprived him of equal protection in that Kocienda did not treat him equally under the administrative directive.

The Equal Protection Clause protects prisoners from invidious discrimination. The provision does not mandate identical treatment for each individual; rather it requires that

similarly situated persons be treated the same.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985).  To prevail on an equal protection claim, Riddick must prove that he was treated differently from other similarly situated individuals and the reason for the different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  Although Riddick alleges that defendant Kocienda acted with intent to punish him, he fails to allege any facts showing that he was treated differently from similarly situated inmates.  He only references general procedural rules.  He does not allege facts showing that other similarly classified inmates were treated in a different manner.

Riddick also could assert an equal protection claim on a "class of one" theory.  To state a valid equal protection "class of one" claim, Riddick must allege (1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment.  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  To prevail on a "class of one" claim, Riddick must allege an "extremely high" level of similarity with the person to whom he is comparing himself.  *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005).  Riddick's circumstances must be "prima facie identical" to the other person's.  *Id.* at 105.  Riddick has identified and presented evidence of no other inmates with similar disciplinary history pending classification for special needs management who were treated differently under the same circumstances.  Thus, he fails to state an equal protection claim.  *See Page v. Lantz*, No. 3:03cv1271(MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that class of one equal protection claim failed as a matter of law where plaintiff did not allege that similarly

situated inmates were treated differently under similar circumstances).  Defendant Kocienda's motion to dismiss is granted as to any equal protection claim.

Although couched in equal protection terms, Riddick actually is arguing that he was not provided various procedural protections following issuance of the disciplinary reports.  Liberally construing the allegations in the amended complaint, the court concludes that Riddick is attempting to reassert the due process claim set forth in the original complaint and dismissed in the Initial Review Order.

In *Sandin v. Connor*, 515 U.S. 472 (1995), the Supreme Court considered the requirements to state a claim for denial of procedural due process.  The Supreme Court held that the plaintiff must demonstrate both a protected liberty or property interest and that he had been deprived of that interest without being afforded due process of law.  To establish a protected liberty or property interest, the plaintiff must show that the state created a liberty interest in a statute or regulation and the deprivation of that interest caused him to suffer an atypical and significant hardship.  *See Tellier v. Fields*, 280 F.3d 69, 81 (2d Cir. 2000).

*Sandin* held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutional liberty interest.  *Sandin*, 515 U.S. at 485-86.  Further, the Second Circuit has held that confinement in restrictive housing for less that 101 days does not constitute an atypical and significant hardship sufficient to state a claim under *Sandin*.  *See Lewis v. Sieminski*, No. 3:08-CV-728(JCH), 2010 WL 3827991, at *6 (D. Conn. Sept. 22, 2010) (noting that "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 30 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*"); *see also Frazier v. Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996) (holding that

120-day confinement in segregation followed by 30-day loss of recreation, commissary privileges, packages and telephone use did not state a cognizable claim for denial of due process); *Nicholson v. Murphy*, No. 3:02cv1815(MRK), 2003 WL 22909876, at *10-11 (D. Conn. Sept. 19, 2003) (holding that confinement in segregation under thirty days is not an atypical and significant hardship).

Riddick alleges that he was held on confined to quarters status for ten days. He also alleges that he was denied showers, telephone usage and hygiene products during that time. The court determines below that the conditions of his confinement are not of constitutional magnitude. The court concludes that a ten-day confinement under the conditions alleges does not constitute an atypical and significant hardship to support a due process claim. Accordingly, any due process claim is dismissed pursuant to 28 U.S.C. § 1915A.

   2.   Eighth Amendment

Riddick next argues that the denial of recreation, showers, telephone usage and hygiene items for ten days constitutes cruel and unusual punishment in violation of the Eighth Amendment. It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also Rhodes v. Chapman*, 452 U.S. 337, 351 (1981). To state an Eighth Amendment claim, an inmate must allege facts demonstrating failure of prison officials to provide for inmates' "basic human needs - - e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 200 (1989).

An inmate may prevail on an Eighth Amendment claim "only where he proves both an

8

objective element–that the prison officials' transgression was 'sufficiently serious'–and a subjective element–that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The objective element is satisfied where the inmate shows that the deprivation he alleges is sufficiently serious, *i.e.*, that his confinement under the alleged conditions violates contemporary standards of decency.  The subjective element requires the inmate to show that correctional officials were aware of and disregarded a substantial risk of serious harm.  *See id.* at 185-86.  Defendants "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw that inference." *Farmer*, 511 U.S. at 837.

        a.      <u>Recreation</u>

Both the Supreme Court and the Court of Appeals for the Second Circuit recognize that exercise is a basic human need that must be provided for inmates.  *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991); *Williams v. Greifinger*, 97 F.3d 699, 704 (2d Cir. 1996); *Sostre v. McGinnis*, 442 F.2d 178, 193 & n.25 (2d Cir. 1971) (en banc), *cert. denied*, 404 U.S. 1049 (1972).  However, the courts have held that deprivations of exercise for relatively short periods are permitted.  *See, e.g., Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996) (finding that keeping inmate on full restraint status without outdoor recreation for twenty-two days does not state Eighth Amendment claim); *Houston v. Goord*, No. 9:03-CV-1412(GTS/DEP), 2009 WL 890658 (N.D.N.Y. Mar. 31, 2009) (Eighth Amendment claim not cognizable because denial of opportunity for outdoor exercise for less than two weeks was *de minimis*); *Shakur v. Sieminski*,

3:07-cv-1239(CFD), 2007 WL 2151174 (D. Conn. July 15, 2007) (one hour of outdoor recreation per day is not a constitutional minimum). Riddick alleges only that he was denied out-of-cell recreation for ten days. The court concludes that the denial of exercise for ten days is *de minimis* and does not rise to the level of an Eighth Amendment violation.

          b.        <u>Conditions of Confinement</u>

Riddick also contends that the denial of showers, telephone access and hygiene products for ten days constitutes unconstitutional conditions of confinement in violation of the Eighth Amendment. Courts considering this issue have held that temporary denial of showers and hygiene products is not unconstitutional. *See, e.g., Silber v. Pallito*, No. 1:09-CV-73, 2011 WL 1225594, at *10 (D. Vt. Feb. 7, 2011) (temporary denial of basic toiletries does not violate the Eighth Amendment (citing cases)), *recommended ruling adopted as modified in other respects,* 2011 WL 1225588 (D. Vt. Mar. 31, 2011); *Fernandez v. Armstrong*, No. 3:02CV2252, 2005 WL 733664, at *5 (D. Conn. Mar. 30, 2005) (denial of hygiene items including a toothbrush, toothpaste, soap, and shampoo for a period of sixteen days does not allege a violation of Eighth Amendment rights (citations omitted)); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'"); *Briggs v. Heidlebaugh*, No. CIV. 96-3884, 1997 WL 318081, at *3 (E.D. Pa. May 21, 1997) (denial of showers for two weeks not a constitutional violation). Riddick does not identify the hygiene products in his amended complaint. In opposition to the motion to dismiss, he states that he was denied a toothbrush, toothpaste, deodorant and soap. *See* Doc. #19 at 10. The denial of those items for ten days does not constitute an Eighth Amendment violation.

Finally, Riddick alleges that he was denied telephone access for ten days. Prisoners have

no constitutional right to unrestricted telephone use. *See Henry v. Davis*, No. 10 Civ. 7575(PAC)(JLC), 2011 WL 5006831, st *2 (S.D.N.Y. Oct. 20, 2011); *Pitsley v. Ricks,* No. 96–CV–0372, 2000 WL 362023, at *4 (N.D.N.Y. Mar. 31, 2000). Riddick does not allege that he was unable to communicate through the mail during that ten-day period. Thus, he fails to state a cognizable claim. *See Pitsley*, 2000 WL 362023, at *5 (dismissing prisoner's section 1983 suit alleging improper denial of telephone access where inmate had alternate means of communication with the outside world by mail).

### 3. Retaliation

Riddick argues that Kocienda sanctioned him with modified confined-to-quarters status in retaliation for Riddick's statement that Kocienda could not punish Riddick because he was not a custodial officer. Kocienda contends that Riddick fails to state a cognizable retaliation claim.

Prison officials may not retaliate against inmates for exercising their constitutional rights. To state a retaliation claim, Riddick must show that his actions were protected by the Constitution or federal law and that his protected conduct was a "substantial or motivating factor" in the alleged retaliatory conduct. *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000). Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003). To support a claim of retaliation, the allegedly retaliatory conduct must be sufficiently harsh to deter a similarly situated inmate of ordinary resolve from exercising his constitutional rights. It is not necessary that the plaintiff himself be deterred. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). Any lesser conduct is *de minimis* and does not support a retaliation claim. Prisoners are required

to tolerate more serious conduct than public employees or private citizens before stating a retaliation claim.

To state a claim for retaliation regarding the filing of a false misbehavior report, the plaintiff must allege both that a defendant filed the report and that his motivation to do so relates to the plaintiff having engaged in protected activity.  *See Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988); *see also Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) ("This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.").  With regard to false misbehavior reports, the type of evidence required to establish a causal connection between the plaintiff's protected conduct and the alleged retaliation include temporal proximity, prior good discipline, a finding of not guilty at the disciplinary hearing and statements from the defendants regarding their motives.  *See Barclay v. New York*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007).

Cases supporting retaliation claims for inmate statements concern actions taken in response to the inmate filing a grievance, instituting a lawsuit or making a complaint to prison officials regarding the conduct of correctional staff.  *See, e.g., Ramsey v. Goord*, 661 F. Supp. 2d 370 (W.D.N.Y. 2009) (retaliation in response to inmate providing statements to counselor against correctional officers); *Sprau v. Coughlin*, 997 F. Supp. 390 (W.D.N.Y. 1998) (retaliation in response to inmate's threat to file grievance against correctional officer).

The court concludes that Riddick fails to state a cognizable retaliation claim.  Riddick alleges that the retaliatory actions were taken because Riddick told Kocienda that he could not issue a disciplinary report.  That statement appears more like a schoolyard taunt than an attempt

to petition the government for redress of grievances. Such comments are not considered protected speech to support a retaliation claim. *See, e.g., Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (inmate's "false and insubordinate remarks" not protected speech); *Riggs v. Miller*, 480 F. Supp. 799, 804 (E.D. Va. 1979) ("bickering argumentative conversation" does not rise to the "lofty position of constitutionally protected speech"). In addition, Riddick does not indicate when he made the statement to Kocienda, thereby failing to allege facts showing a temporal relationship between his statement and the allegedly retaliatory actions. Kocienda's motion to dismiss is granted with respect to the retaliation claim.

    4.    Eleventh Amendment

Kocienda argues that the Eleventh Amendment protects him from suit for damages in his official capacity. He also states that he cannot discern why the court ordered the complaint served in his individual capacity.

In his original complaint, Riddick named all defendants in their individual and official capacities. *See* Doc. #1 at 1. In his amended complaint, Riddick seeks damages. The court is aware of the Eleventh Amendment prohibition. Therefore, because Riddick did not specify that capacity in which defendant Kocienda was named in the amended complaint, the court construed the amended complaint to assert individual capacity claims and ordered service on Kocienda only in his individual capacity.

Accordingly, to the extent that the defendant addresses this argument to claims asserted against him in his official capacity, the motion to dismiss is denied.

III.    Conclusion

The defendant's Motion to Dismiss [**Doc. #14**] is **GRANTED** and any due process claim

is **DISMISSED** pursuant to 28 U.S.C. § 1915A.  Riddick's motion to amend [**Doc. #15**] is

**DENIED**.   The Clerk is directed to enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 9th day of July 2012.

 /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge